UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN M. HOLLAND,               ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| v.                              ) | Case No. 1:14-cv-01442-JMS-DKL |
| ) | |
| CORIZON CORPORATION, DR.        ) | |
| JACQUE LECLERC, K. GRAY, LESA   ) | |
| WOLFE, AND MD. MICHAEL          ) | |
| MITCHEFF, DR. RIOS DO. ROLANDO, ) | |
| ) | |
| Defendants.   ) | |

**Entry Discussing Defendants' Motion for Summary Judgment
and Directing Further Proceedings**

For the reasons explained in this Entry, the defendants' motion for summary judgment [dkt. 38] is **granted in part and denied in part.**

**I. Background**

The plaintiff in this 42 U.S.C. § 1983 civil rights action is John Holland ("Mr. Holland"), an inmate who at all relevant times was confined at the Wabash Valley Correctional Facility ("WVCF"). The defendants are 1) Corizon, LLC ("Corizon"); 2) Dr. Jacques LeClerc ("Dr. LeClerc"); 3) Dr. Rolando Rios ("Dr. Rios"); 4) Dr. Michael Mitcheff ("Dr. Mitcheff"); 5) Nurse Kim Gray ("Nurse Gray"); and 6) Nurse Lesa Wolfe ("Nurse Wolfe").

In his second amended complaint, Mr. Holland alleges that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. He also asserts state law claims of medical malpractice and negligence. He seeks compensatory and punitive damages and injunctive relief. Although he has since been transferred to the New Castle

Correctional Facility, his claims for injunctive relief are not necessarily moot because he seeks policy changes from Corizon, which provides medical care to all Indiana state prisoners.

The defendants seek resolution of the plaintiff's claims through summary judgment. The plaintiff has responded to the defendants' motion for summary judgment. The defendants did not reply.

## II. Summary Judgment Standard

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp*., 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

## III. Discussion

### A. Factual Background

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Holland as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

Mr. Holland started working at Pen Products at WVCF in November 2009, and in November 2012, he was employed at the Sewing Shop, earning approximately $10,000 a year. On or about November 20, 2012, Mr. Holland fell on his way to eat breakfast. That same day, he had a routine Chronic Care appointment with Dr. LeClerc. Dr. LeClerc was employed by Corizon as the Medical Director at WVCF from January of 2011 through January of 2013. At this appointment, Mr. Holland received a full physical examination and assessment of all chronic illnesses, which included hypertension, GERD, hepatitis C, and Lipidemia. Mr. Holland asked Dr. LeClerc to treat his right foot which Mr. Holland states was very swollen and painful. Dr. LeClerc observed Mr. Holland remove his boot and examined his right foot.

Mr. Holland states in his declaration that Dr. LeClerc said the foot had to be causing him a lot of pain but told him that he could not provide any pain medication because of an order by Dr. Mitcheff and the practice of Corizon. Dkt. 44, ¶ 8. Dr. LeClerc denies any awareness of a Corizon policy that says inmates should not be provided pain medication. Dr. LeClerc also states that he did not observe any clinical presentations of trauma or any indication that Mr. Holland was in acute pain or had suffered a severe trauma. He states that at no time did he base his medical care of Mr. Holland on anything other than his medical judgment. Dr. LeClerc contends that he did not

prescribe pain medication because non-narcotic pain medication is available in the dorms and in commissary.

It is Dr. LeClerc's opinion that any stronger pain medication would not be clinically appropriate based solely upon one initial complaint of foot pain and no clinical presentations of acute pain or trauma. He opines that opioids or narcotics, which are highly addictive pain medications, are not clinically indicated for general complaints of pain, and that these types of pain medications are generally prescribed only for short term use for acute pain.

Mr. Holland told Dr. LeClerc that he was having trouble standing and walking was very painful. Mr. Holland asserts that Dr. LeClerc told him that he could have a fracture. Dr. LeClerc ordered x-rays of his foot. Mr. Holland states that Dr. LeClerc told him that he did not need time off work at Pen Products, meals delivered to his cell, or crutches. Dr. LeClerc also renewed Mr. Holland's prescription medications for treatment of his chronic conditions. Dr. LeClerc did not see Mr. Holland again and was not the physician who reviewed the foot x-ray. It appears that his only encounter with Mr. Holland relevant to this action was the November 20, 2012, Chronic Care visit.

There are no notations about Mr. Holland's foot in the November 20, 2012, medical record, other than the fact that Dr. LeClerc ordered x-rays. Dr. LeClerc told Mr. Holland that he would see him when the x-ray results were available but that he thought Mr. Holland had gout, not a fracture.

At all times relevant to this suit, Nurse Wolfe was employed as a Licensed Practical Nurse at WVCF. Ms. Wolfe assisted Dr. LeClerc with measuring and charting Mr. Holland's vital signs during the November 20, 2012, Chronic Care Visit. Ms. Wolfe did not observe any clinical presentations of trauma, any indication that Mr. Holland was in acute pain, or any sign that he had

suffered a severe trauma. Mr. Holland states that Nurse Wolfe told him that he needed to "man up, there's nothing really wrong" with you.

Because Dr. LeClerc was the primary medical provider, Nurse Wolfe was not responsible for assessing Mr. Holland's complaints. She did not have the authority to override Dr. LeClerc's medical evaluation and determination of Mr. Holland's complaints, nor did she have any authority to prescribe narcotic pain relievers. The November 20, 2012, Chronic Care Visit is the only medical encounter with Mr. Holland in which Ms. Wolfe participated.

On December 5, 2012, Mr. Holland submitted a Request for Health Care ("RHC") complaining that his right foot was very swollen and painful. He asked for the x-ray results and to be seen by a doctor. He stated that he could "still walk but not sure how long that will last." Dkt. 45, p. 7.

The x-rays ordered by Dr. LeClerc were reviewed by Dr. Rios, who was employed by Corizon and worked at WVCF for less than two months, from December 1, 2012, through January 14, 2013. Dr. Rios saw Mr. Holland on December 13, 2012.

Dr. Rios noted Mr. Holland's complaints of pain and swelling in his right foot. The medical record also reflects that Mr. Holland stated he had not had any injury that he could remember and that he previously had swelling in his hand. Dr. Rios reviewed the chart and noted that the x-ray indicated no acute process or injury, but also noted that the x-ray appeared to be over-penetrated. Dr. Rios provided a physical examination of Mr. Holland's foot and noted possible causes of pseudogout verses rheumatoid arthritis.

At the conclusion of the examination, Dr. Rios offered Mr. Holland Naproxen for alleviation of his symptoms, which Mr. Holland declined. Dr. Rios ordered another x-ray and noted the need for a consult with a Rheumatologist for evaluation. Mr. Holland was provided with

Prednisone, a corticosteroid, on that date, to alleviate swelling and pain. Mr. Holland states that Dr. Rios told him that his foot did not look good but refused to give him pain medication or crutches, meals in his cell, or a medical authorization that would have allowed him to miss work.

After Mr. Holland saw Dr. Rios, he submitted a Request for Interview with his counselor, complaining that his hand had been swollen and painful for four months and his foot had been swollen and painful for five weeks. He reported that he had been given Prednisone (a steroid) and gout medication which caused adverse reactions. He reported having to miss work and meals during the last five weeks and being in continuous pain. He said he had a very hard time walking and walking caused the pain to be worse. He requested something that would work on his pain and an MRI on his hand and foot. He stated he was "getting a run around." Dkt. 45, p. 8.

On December 20, 2012, Mr. Holland submitted a RHC asking for the second x-ray results. In response, Mr. Holland was seen at nursing sick call and the x-ray results were explained. The written response to the RHC dated December 21, 2012, stated that "[t]here is no evidence of fracture, dislocation or [illegible] foreign body. Dkt. 45, p. 11.

In January 1, 2013, Mr. Holland sent another RHC, stating, "Once again my right foot is swelled and very painful. The medication that has been given to me has not helped at all. The x-ray shows nothing wrong. I need to see a real doctor and something for the pain. I need help as soon as possible. If you cannot do anything for me, please advise, and I will take other steps to get help." Dkt. 45, p. 12. Dr. Rios saw Mr. Holland for a second time on January 9, 2013, at which time he told Mr. Holland that the second x-ray revealed a healing fracture of Mr. Holland's 2nd metatarsal. As the fracture was noted to be well-aligned and healing, Dr. Rios' course of treatment was to advise Mr. Holland to stay off his feet. Prednisone was ordered to be tapered off because

Dr. Rios' earlier consideration of the underlying cause of his symptoms had been refuted by the x-ray.

Mr. Holland asserts that Dr. Rios refused to give him any pain medication, no posterior mold, splint, crutches, medical authorization to miss work, or an order have meals in his cell. He states that Dr. Rios told him that he could not get any pain medication approved by the Regional Medical Director. Dr. Rios states that he did not prescribe any other pain medications because Mr. Holland had declined Naproxen, and non-narcotic pain relievers were available in the dorms and commissary of the prison. He further states that he is unaware of any policy of Corizon that provides that inmates should be denied pain medication.

It is Dr. Rios' opinion that the basic principles of treating metatarsal fractures include simple painkillers, such as Ibuprofen, ice within 10-30 minutes of the injury, elevation (initially aims to limit swelling), rest, discontinuation of the offending activity if the injury was caused by repetitive overuse, and hard sole shoes if the fracture is well-aligned and healing. Depending on the fracture, immobilization and surgery, (for example to re-align the bone) may be needed.

Because Mr. Holland's second x-ray revealed a well-aligned, well-healing fracture, it was Dr. Rios' medical opinion that there was no clinical need for Mr. Holland to receive a splint, cast, or any other pain medication than what was available to him in the commissary or in his dorm. Dr. Rios states in his declaration that he did not observe any clinical presentations of trauma or any indication that Mr. Holland was in acute pain or that he had suffered a severe trauma necessitating a stronger pain medication. Dr. Rios states in his affidavit that with the care and treatment of Mr. Holland, he relied solely on his medical judgment to determine appropriate medical care.

Mr. Holland states that after he saw Dr. Rios on January 9, 2013, he "run into" Nurse Gray, "on the walk" and asked her to help him get pain medication, crutches or written authorization to

7

miss work and obtain meals in his cell so he could stay off his foot. Dkt. 44, ¶ 17. He asserts that he told her that he had a good job and did not want to lose it. He states that Nurse Gray told him she could not do anything about that. She said "good luck on the pain medication." *Id.* At all times relevant to the complaint, Nurse Gray was employed by Corizon as Director of Nursing at WVCF. As Director of Nursing, Nurse Gray's job responsibilities included supervising and coordinating activities of nursing personnel at WVCF. At no time relevant to Mr. Holland's claims was Nurse Gray the primary medical personnel attending him during a medical encounter at WVCF.

On January 20, 2013, Mr. Holland submitted another HCR, complaining that his right foot was "very swelled and very painful." Dkt. 45, p. 14. On January 30, 2013, he was seen by Dr. Gregory D. Haynes, MD, at which time he complained of pain from a fracture "4 months ago." A physical examination revealed tenderness over the 2nd metatarsal. Dr. Haynes prescribed Naproxen, an NSAID, (nonsteroidal anti-inflammatory drug), as needed and another x-ray.

Around this time, Mr. Holland asked the Supervisor in the Sewing Shop to help him get a job in the Wire Shop, where he could stay off his feet more often. He was given a job in the Wire Shop and was moved into the E-Unit housing where Wire Shop workers had their meals. He worked there from January 25, 2013, until March 18, 2013.

Mr. Holland states in his sworn declaration that he submitted at least five more RHC forms between January 25, 2013, and March 18, 2013, seeking medical attention for his foot, but he did not receive any response. He has not submitted any copies of those requests nor are they part of the medical record.

On March 18, 2013, Mr. Holland submitted a Request for Interview to his counselor, complaining that his fractured right foot at the base of his 2nd metatarsal was very painful. He wrote that two doctors had treated him for gout and took x-rays, but his foot was not better, it was swelled

and very painful. Mr. Holland asked his counselor to contact the medical department and attempt to resolve the problem. The request was stamped received in the Superintendent's Office on March 19, 2013. A handwritten note on the request indicated that medical was emailed on April 19, 2013, but no response was received as of May 21, 2013. Dkt. 45, p. 16.

On March 26, 2013, Mr. Holland submitted a RHC stating that his right foot had been fractured since October, 2012, and it was swelled and very painful. He complained that his foot was not getting better and he needed medical treatment as soon as possible. Dkt. 45, p. 17.

Mr. Holland saw Dr. Lolit Joseph on April 4, 2013, for pain in his right foot and evaluation of his diabetic hemoglobin levels. Dr. Joseph prescribed Atrovent, Tegretol, Vasotec, and Xalatan, and ordered another x-ray of Mr. Holland's right foot.

On April 6, 2013, Mr. Holland received a memo from T. Littlejohn in response to his March 18, 2013, request for assistance with his medical issue. Mr. Littlejohn stated that he would forward Mr. Holland's request to Director of Nursing Gray.

Mr. Holland saw Dr. Joseph again on April 25, 2013. Dr. Joseph reviewed the x-ray results, which revealed a "nonunion of the proximal 2d metatarsal." Dr. Joseph prescribed Mobic, a NSAID, Atrovent, hydrochlorothiazide, Tegretol, Vasotec, and Xalatan and had a cast placed on Mr. Holland's foot. She also ordered crutches and a bottom bunk pass for six weeks and a consult for Mr. Holland with an orthopedist.

On May 2, 2013, Mr. Holland saw Dr. Joseph for a scheduled Chronic Care Visit. Dr. Joseph provided a full physical examination and prescribed Albuterol, Atrovent, hydrochlorothiazide, Lopid, Mobic, Tegretol, Vasotec, and Xalatan.

Mr. Holland filed a grievance on June 11, 2013. His grievance was denied and he appealed. The appeal was referred to the Director of Health Services who determined that the grievance was

"founded and addressed." Dkt. 45, p. 35. The appeal response stated that when the healing fracture was noted by x-ray on December 21, 2012, the physician did not order any pain medication, a posterior mold or splint, or crutches. *Id.* Mr. Holland was seen again on January 9, 2013, and the fracture was noted. *Id.* He was advised to stay off his feet but no crutches or splints were provided. *Id.* The appeal response further noted that he was seen on April 4, 2013, for pain in his right foot. Another x-ray was taken, which showed nonunion of the second metatarsal fracture. *Id.* Mr. Holland was not referred to an orthopedic specialist until April 25, 2013. *Id.* He saw an orthopedic specialist on May 10, 2013, and was given a walking boot to wear when he was up. *Id.*

On June 19, 2013, Dr. Kleinman performed surgery on Mr. Holland's second metatarsal base at Terre Haute Regional Hospital. Mr. Holland was returned to WVCF on June 20, 2013, with a walking boot and a prescription for Vicodin. The prescription was for Norco 7.5/325, #30, one q. 4-6 p.r.n. pain with one refill. Dkt. 45, p. 61.

Mr. Holland was seen by Dr. Michael Rogan upon his return to WVCF on June 20, 2013. He was examined and provided crutches for walking. Instead of the Norco, a seven day prescription of Vicodin 5/500 was approved, two times a day, for post-surgical pain. Dkt. 39-2, p. 52.

A post-surgery x-ray was taken on June 27, 2013, which indicated that the foot was healing from surgery. Mr. Holland saw the surgeon, Dr. Kleinman, at Terre Haute Regional Hospital on July 3, 2013. Mr. Holland made no complaints of pain at that time and a follow up examination was scheduled for August 9, 2013. Dkt. 39-2, p. 21.

On August 7, 2013, Mr. Holland saw Dr. Gregory Haynes for a WVCF Chronic Care Visit at which time he indicated that one of his prescription medications made him feel "very light

headed and flushed." Dkt. 39-2, p. 17. Dr. Haynes discontinued that prescription and ordered a lipid panel. *Id.* There were no complaints of pain noted. *Id.*

At his follow-up appointment with Dr. Kleinman at the outside hospital, two days later, August 9, 2013, Mr. Holland denied any significant pain. Dr. Kleinman noted that Mr. Holland was "doing very well." Dkt. 39-2, p. 15. Mr. Holland states in his declaration that he told Dr. Kleinman that he was not having a lot of pain like before surgery, but he was experiencing hot burning pain running up his foot. Dkt. 44, ¶ 32. (the second ¶ 32). Dr. Kleinman's note recites "He has mild occasional discomfort with occasional paresthesia." Dkt. 39-2, p. 15. Mr. Holland was told to wear boots with as much cushioning and arch support as possible and that no further treatment for his metatarsal fracture was needed. Dkt. 39-2, p. 14-15. Dr. Kleinman told Mr. Holland that if a boot does not help, he would most likely need medication for nerve pain. Mr. Holland states that WVCF medical staff refused to provide him with a boot with sufficient cushioning.

On August 14, 2013, Mr. Holland submitted a HRC complaining that his foot was very, very swollen. Dkt. 45, p. 36. On August 22, 2013, he was seen by Dr. John Clarkson for complaints that his foot had been swollen, inflamed, and painful during the previous week. Dkt. 39-2, pp. 11-13. Dr. Clarkson prescribed Prednisone and Naprosyn, ordered an x-ray, and referred Mr. Holland to podiatry. Dkt. 39-2, p. 11. The follow-up x-ray indicated that the "[a]lignment appears satisfactory." Dkt. 39-2, p. 10.

On September 24, 2013, Mr. Holland submitted a RHC requesting the cushioned boots that Dr. Kleinman had advised him to wear. Dkt. 45, p. 40, 42. He was never given the boots. Dkt. 44, ¶ 32, ¶ 35.

When Mr. Holland was seen by a nurse during a Chronic Care Visit on October 12, 2013, there was no notation of any complaint of foot pain.

From September of 2005 through July of 2014, defendant Dr. Michael Mitcheff was employed by Corizon as Regional Medical Director ("RMD") and as Vice President of Clinical Services. At no time during his employment with Corizon, either as RMD or as Vice President of Clinical Services, did Dr. Mitcheff issue an "order" that Mr. Holland or inmates in general not receive pain medications. As RMD, Dr. Mitcheff did not make treatment decisions for inmate patients. Rather, part of his responsibilities included reviewing requests from an inmate's primary medical provider to prescribe drugs that were considered formulary exceptions, to which he simply agreed or recommended an Alternative Treatment Plan ("ATP"). The onsite medical provider proceeded to treat the inmate, regardless of the ATP recommendation. At no time during the period of time relevant to Mr. Holland's allegations in this action did Dr. Mitcheff receive a request for him to receive a non-formulary prescription. Dr. Mitcheff is unaware of any practice or policy of Corizon that provides that inmates should be denied pain medication when warranted.

### B. Analysis

#### 1. State Law Claims

It is undisputed that Mr. Holland did not file a complaint with the Indiana Medical Review Panel. Dkt. 31, p. 8. It is also undisputed that Mr. Holland seeks damages far in excess of the $15,000.00 limit that would allow him to bypass review by the panel. Dkt. 31, p. 7. *See* Ind. Code § 34-18-8-6. Therefore, the defendants' motion for summary judgment is **granted** with respect to the state law claims of medical malpractice and negligence.

#### 2. Deliberate Indifference Eighth Amendment Claims

At all times relevant to Mr. Holland's §1983 claim, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 8374 (1994).; *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014); *Arnett v. Webster,* 658 F.3d 742, 750-51 (7th Cir. 2011). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014).

For purposes of summary judgment, the parties do not dispute that Mr. Holland had a serious medical need.

**Dr. LeClerc**

With respect to the claim against Dr. LeClerc, the parties dispute whether Mr. Holland presented in extreme pain and whether his foot was swollen. The parties also dispute whether there was mention of a Corizon policy and an order of Dr. Mitcheff to not prescribe pain medication for inmates. Accepting Mr. Holland's version of the facts as true for purposes of this motion for summary judgment, a reasonable jury could find that Dr. LeClerc was deliberately indifferent to the pain Mr. Holland was experiencing by not prescribing any pain medicine, treatment or other

accommodations. The motion for summary judgment seeking resolution of the claim against Dr. LeClerc is **denied.**

### Nurse Wolfe

With respect to the claim against Nurse Wolfe, the motion for summary judgment is **granted** because it is undisputed that she did not have the authority to override Dr. LeClerc's evaluation of Mr. Holland's complaints. She also did not have the authority to prescribe narcotic pain medication. She assisted Dr. LeClerc by taking and charting Mr. Holland's vital signs. Under these circumstances, a reasonable jury could not find that she was deliberately indifferent to Mr. Holland's serious medical needs.

### Dr. Rios

When Mr. Holland first saw Dr. Rios on December 13, 2012, he was complaining of swelling in his hand and right foot. Dr. Rios noted in the medical record that Mr. Holland did not recall suffering any injury. Mr. Holland's claim that Dr. Rios refused to prescribe him pain medication is disputed. According to Dr. Rios, Mr. Holland declined his offer of Naproxen. Naproxen is a nonsteroidal anti-inflammatory drug that reduces pain and swelling. *See* www.webmd.com/drugs (visited March 28, 2016).

Mr. Holland was not given accurate information when first informed of the results of his second x-ray. It is possible that the medical staff response on December 21, 2012, could have mistakenly been referring to the first x-ray, which, in fact, showed no evidence of fracture. The second x-ray showed a healing fracture of the base of the 2nd metatarsal that was anatomically aligned. This report appears to have been scanned on December 21, 2012. Dkt. 45, p. 10. Nonetheless, there is no evidence that any medical staff intentionally gave Mr. Holland incorrect

results of the second x-ray. He was informed of the fracture on January 9, 2013, when he saw Dr. Rios.

At the January 9, 2013, appointment, after it was known that Mr. Holland had suffered a fractured second metatarsal which was aligned and healing, Dr. Rios told him to stay off his feet. Dr. Rios, however, did not give Mr. Holland any means to carry out that directive. Mr. Holland argues that a reasonable jury could find that Dr. Rios exhibited deliberate indifference when he advised Mr. Holland to stay off his feet because he had a fracture, but failed to prescribe pain medication, crutches or medical authorization to obtain meals in his cell and time off work. The Court agrees. The record is also disputed as to whether Dr. Rios told Mr. Holland that the RMD (Dr. Mitcheff) would not approve pain medication. The motion for summary judgment is **denied** with respect to the claim asserted against Dr. Rios.

**Nurse Gray**

With respect to the claim against Nurse Gray, Director of Nursing, Mr. Holland saw her, not during a medical appointment, but "on the walk." He asked her to help him get pain medication, crutches or written authorization to miss work and obtain meals in his cell so he could stay off his foot. She told him she could not do anything about that. The undisputed evidence reflects that Nurse Gray's job responsibilities were to supervise and coordinate the activities of the nurses at WVCF, and she was not present during any medical encounter with Mr. Holland. She states in her declaration that she never witnessed Mr. Holland in acute distress or trauma that would have required her intervention. Dkt. 39-5, p. 4.

Section 1983 liability requires a defendant's personal involvement in the alleged constitutional violation. *Munson v. Gaetz*, 673 F.3d 630, 637 (7th Cir. 2012); *Burks v. Raemisch,* 555 F.3d 592, 593-94 (7th Cir. 2009) ("Section 1983 does not establish a system of vicarious

responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise.") (internal citation omitted). "It is well established that there is no *respondeat superior* liability under § 1983." *Gayton v. McCoy,* 593 F.3d 610, 622 (7th Cir. 2010).

The Court finds that Nurse Gray did not have sufficient direct involvement in Mr. Holland's medical care, in particular at the time he stopped her and asked for assistance, to bring her within the zone of liability. The motion for summary judgment brought on behalf of Nurse Gray is **granted.**

### Corizon and Dr. Mitcheff

Even a few days' delay in addressing a severely painful but readily treatable condition may constitute deliberate indifference. *Smith v. Knox County Jail,* 666 F.3d 1037, 1039-1040 (7th Cir. 2012). A prisoner need not show that he was "literally ignored" to establish deliberate indifference. *Arnett v. Webster,* 658 F.3d 742, 751 (7th Cir. 2011). Mr. Holland has submitted sufficient evidence to create a genuine issue of fact as to whether Dr. Mitcheff and Corizon had a practice or policy of denying sufficiently strong pain medication, meaning medication that could not be ordered on commissary. Mr. Holland states under penalty of perjury that two physicians told him that Corizon/Mitcheff would not approve their requests for pain medication. He also points out that his post-surgical prescription of Norco 7.5/325 #30 every 4-6 hours as needed (with one refill), dkt. 39-2, p. 52, was reduced at WVCF to seven (7) days of Vicodin 5/500, dkt. 45, p. 69. The Court does not find that this, in and of itself, is deliberate indifference, but it goes to the issue of whether adequate pain medication was denied to Mr. Holland, and is denied to inmates on a regular basis at the prison. The motion for summary judgment filed by Corizon and Dr. Mitcheff is **denied.**

## IV. Conclusion and Further Proceedings

As to the claims asserted against defendants Nurse Gray and Nurse Wolfe, the motion for summary judgment [dkt. 38] is **granted.** No partial final judgment shall issue at this time as to the claims dismissed against those defendants.

As to the claims asserted against defendants Corizon, Dr. LeClerc, Dr. Rios, and Dr. Mitcheff, the motion for summary judgment [dkt. 38] is **denied** for the reasons set forth in this Entry.

The Magistrate Judge is requested to set this matter for a status conference to discuss and direct the further development of this action.

**IT IS SO ORDERED.**

Date: April 12, 2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

JOHN M. HOLLAND
31008
NEW CASTLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Magistrate Judge Denise K. LaRue